THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>ANGELIQUE MARIE EASTON,<br><br>　　　　　　　　Defendant. | CASE NO. CR21-0174-JCC-12<br><br>ORDER |

This matter comes before the Court on Defendant's motion for compassionate release (Dkt. No. 806).[1] Having thoroughly considered the briefing and the relevant record, the Court DENIES Defendant's motion for the reasons explained herein.

In June 2023, the Court sentenced Defendant to 72 months in the custody of the Bureau of Prisons ("BOP") and four years of mandatory supervised release after she pleaded guilty to conspiracy to distribute controlled substances. (Dkt. No. 579 at 1–3.) She is scheduled for release in July 2027. (*See* Dkt. No. 806 at 17 n.8.) During her incarceration in Washington, Florida,[2] and

---

[1] Plaintiff initially submitted her motion *pro se*. (Dkt. No. 752.) Counsel for Plaintiff was subsequently appointed, (Dkt. No. 760), and a new motion for compassionate release was submitted, (Dkt. No. 806). Therefore, the Court treats the more recent motion as the operative motion and STRIKES the prior motion (Dkt. No. 752).

[2] Plaintiff mentions a pepper spraying incident at the Tallahassee facility but admits there is no evidence that it was anything but accidental. (*See* Dkt. No. 806 at 9–11.) In fact, the only video

ORDER
CR21-0174-JCC-12
PAGE - 1

now Connecticut, Defendant has raised multiple issues with her left eye. She first complained about vision problems in May 2023. (Dkt. No. 831-3 at 25.) BOP doctors were concerned that this could be symptomatic of a tumor, (*see* Dkt. No. 831-3 at 23), but a December 2023 MRI scan revealed no tumor or other cause. (*Id.* at 117–18.) After Defendant continued to report vision issues, (*see* Dkt. No. 831-4 at 84), doctors ordered a second MRI in April 2024 on the suspicion that Defendant's symptoms stemmed from multiple sclerosis ("MS"). (*Id.* at 241.) But the second MRI showed no change from the first and was also inconclusive. (*See id.* at 50.) Then, BOP took her for a lumbar puncture in August 2024, which did not reveal signs of MS, either. (*See id.* at 202, 207.)

Defendant was transferred to her current Connecticut facility in September 2024 and a doctor there reviewed her medical history, including the suspicions of MS and past eye issues. (*See id.* at 9–18.) He recommended an appointment with an ophthalmologist. (*Id.* at 14.) While that appointment has not occurred yet, (*see* Dkt. No. 829 at 16), Defendant was taken to an optometrist in November 2024. (*See* Dkt. No. 831-4 at 4–6.) The medical records submitted do not contain any diagnosis for Defendant's eye issues, whether from MS or otherwise. (*See generally* Dkt. Nos. 831-1, 831-2, 831-3, 831-4, 831-5.) Now, she submits that delays in medical care are circumstances that justify compassionate release. (Dkt. No. 806 at 14–15.)

It is within the Court's discretion to reduce a term of imprisonment if (1) the defendant has exhausted her administrative remedies with BOP, (2) extraordinary and compelling reasons warrant a reduction, and (3) a reduction is consistent with the applicable policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A); United States Sentencing Guidelines ("USSG") § 1B1.13. If these three elements are satisfied, the Court must also consider the factors articulated in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); USSG

---

evidence shows BOP administering medical care after this incident. (*See* Dkt. No. 831-7.) Nor does Plaintiff explain how this incident exacerbated her eye issues. Therefore, the Court does not find this submission particularly relevant.

§ 1B1.13(a). It is a defendant's burden to make this showing. *See United States v. DeVore*, 2024 WL 3226683, slip op. at 1 (W.D. Wash. 2024). Extraordinary and compelling medical circumstances include: (1) suffering from a terminal illness; (2) suffering from a serious condition that substantially diminishes the ability of the defendant to provide self-care within a correctional facility and from which the defendant is not expected to recover; and (3) suffering from a medical condition that requires long-term specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. *See* USSG § 1B1.13(b)(1).

While the Government does not dispute exhaustion, (*see generally* Dkt. No. 829), Defendant fails to establish the extraordinary and compelling circumstances required for a reduction in sentence. Defendant has not been diagnosed with a terminal illness or an illness that substantially diminishes her ability to care for herself in prison. In fact, despite multiple examinations and specialist visits during her period of confinement, it is not clear *what* Defendant is suffering from. (*See generally* Dkt. Nos. 831-1, 831-2, 831-3, 831-4, 831-5.) The first MRI eliminated the possibility of a tumor. The second did not find indicators of MS, nor did the lumbar puncture. While the record suggests that MS may be the doctors' best guess, none have made that diagnosis. Defendant alleges, at best, that she is untreated for an undiagnosed medical condition. (*See* Dkt. No. 806 at 14) (Defendant states she "is *likely* suffering from multiple sclerosis or a demyelinating disease") (emphasis added). In other words, she has not been treated for MS because she has not been diagnosed with MS. This strikes the Court as a medical problem, not a legal one. *See United States v. Keehn*, 2024 WL 2717402, slip op. at 1 (9th Cir. 2024) (affirming denial of release based on "a series of undiagnosed conditions [defendant] might have"). Therefore, the Court does not find that Defendant has a medical condition that requires certain care, let alone that it is unavailable in prison as the statute and USSG require.

Prison may be "a difficult place to receive medical care," (Dkt. No. 806 at 15), but this

generalized grievance is not extraordinary. *See United States v. Davis*, 2022 WL 952259, slip op. at 4 (W.D. Wash. 2022) (finding that delays existed but "no evidence that the treatment needs for [defendant's] various concerns are being ignored"). Delays there are predictable as they are elsewhere.[3] Nor is it clear that diagnosing Defendant would be any easier upon her release. It seems instead to the Court that the BOP has made and continues to make good faith efforts to diagnose Defendant's issues. The record does not otherwise suggest that Defendant is at risk of serious deterioration in health or death. (*See generally* Dkt. Nos. 831-1, 831-2, 831-3, 831-4, 831-5.) As such, Defendant is receiving adequate care. She has not established the requisite extraordinary and compelling medical circumstances.

Accordingly, the Court DENIES Defendant's motion (Dkt. No. 806). The Court also finds good cause and GRANTS the Government's motion to seal certain exhibits containing sensitive and personal information (Dkt. No. 830).

It is so ORDERED this 12th day of March 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[3] The Government recognizes that a recommended ophthalmology appointment has not occurred. (Dkt. No. 829 at 16.) While this delay does not presently justify the extraordinary release sought, the Court notes that further delay could verge on a denial of care, at which time Defendant could renew her motion.

ORDER
CR21-0174-JCC-12
PAGE - 4